IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF WYOMING

FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

2015 OCT 15  AM 8 05

STEPHAN HARRIS, CLERK
CHEYENNE

| | |
|---|---|
| GAIL A. ROBINSON, INDIVIDUALLY AND AS PERSONAL REPRESENTATIVE OF THE ESTATE OF WILLIAM J. ROBINSON, et al., | |
| Plaintiff, | Case No. 14–CV–161–ABJ |
| v. | |
| FLOWSERVE, INDIVIDUALLY AND AS SUCCESSOR TO DURCO PUMPS, GENERAL ELECTRIC, INC., GOULDS PUMPS, INC., TATA CHEMICALS PARTNERS, | |
| Defendants. | |

**FINAL PRETRIAL ORDER**

This Matter having come before the Court on October 14, 2015, at the final pretrial conference held before Alan B. Johnson, United States District Judge, pursuant to Federal Rule of Civil Procedure 16; Jason Ochs and Sharon Zinns appearing as counsel for Plaintiff; Glenn Swetman and Jeff Meyer appearing as counsel for Defendant Flowserve; Jeff Coons appearing as counsel for Defendant Goulds Pumps, Incorporated, the following action was taken:

1. **JURISDICTION AND PARTIES**

This case was transferred to the United States District Court for the District of Wyoming by the United States District Court for the District of New Jersey upon motion by Defendants. The Jurisdiction of the Court is not disputed and is hereby determined to be present pursuant to 28 U.S.C. § 1332.

2. **GENERAL NATURE OF THE PARTIES' CLAIMS**

(a) **Plaintiff's Contentions**

Plaintiff contends that William Robinson's malignant mesothelioma was caused by his exposure to asbestos while working at the Green River soda ash plant from 1966 to 1999. Defendants are liable for failing to warn him of the hazards of asbestos and failing to maintain a safe premises, among all other contentions in the Complaint.

(b) **Defendants' Contentions**

<u>Defendant Flowserve Corporation</u>:

Flowserve Corporation f/k/a The Duriron Company ("Duriron") is responsible for Durco pumps and valves. The repair and overhaul of Durco pumps may have involved the replacement of asbestos gaskets or packing. Duriron valves that may have been sold to the Green River soda ash plant would not have had internal asbestos components. Decedent could only have encountered gaskets and packing supplied by Duriron the first time gaskets or packing were removed from a pump. Duriron denies that Mr. Robinson was exposed to asbestos or asbestos-containing products that may have originally been supplied with its pumps.

Plaintiff generally alleges that Mr. Robinson was exposed to asbestos while working at the Green River soda ash plant from 1966 to 1999. Plaintiff has not however specified how Mr. Robinson was exposed to asbestos from a Duriron product, or a component part supplied by Duriron. If Duriron's product originally contained an asbestos-containing component part, then Duriron denies that Mr. Robinson was exposed to it. If Mr. Robinson was exposed to asbestos or an asbestos-containing product sold with a Duriron pump, Duriron denies that this exposure was a substantial contributing factor in causing his disease and death. If Mr. Robinson was exposed

to asbestos or an asbestos-containing product from a product added to a Duriron product by another entity once it left Duriron's possession (including external insulation, flange gaskets which connected pumps to piping systems, or replacement gaskets or packing sold and supplied by others), Duriron denies that it has any legal responsibility for that added product not manufactured, sold, supplied, recommended or specified by Duriron.

Most Duriron pumps sold at the plant contained mechanical seals manufactured by third parties. Duriron did not recommend the use of shaft packing on a pump that contained a mechanical seal, nor did Duriron recommend or specify to customers that they use asbestos packing. There is no evidence in the case that Mr. Robinson was exposed to asbestos from working on any Duriron product. Mr. Robinson may have installed and removed flange gaskets connecting Duriron equipment to piping systems. Duriron, however, never sold, supplied or recommended the use of asbestos-containing flange gaskets. The only flange gaskets ever sold or supplied by Duriron to any customer were non-asbestos, i.e. metal encapsulated with Teflon. The pump Defendants allege that they designed and supplied equipment that functioned as intended, and that they were not negligent or at fault in so doing. Defendants allege that Mr. Robinson's use of their products, if any, did not cause his injury.

<u>Defendant Goulds Pumps, Inc.</u>:

Goulds Pumps, Inc. is the manufacturer of Goulds pumps. In this case, Plaintiff also alleges that Goulds is responsible for Morris pumps. Pumps themselves are metal, not asbestos. Pumps regularly contain gaskets and packing. Gaskets and packing wear out and are replaced. Goulds supplied some of its pumps with internal gaskets and packing, but not flange gaskets or insulation. Some pumps were supplied with mechanical seals instead of packing material. Decedent could only have encountered gaskets and packing supplied by Goulds the first time

gaskets and packing were removed from a pump. Installing a new pump would not expose a worker to the internal gaskets or packing, or to any asbestos that might be in the internal gaskets or packing.

The gaskets and packing in some pumps, depending on the application and other factors, contained asbestos. Gaskets and packing can only be accessed by taking part or all of the pump apart which is required for certain maintenance and repair operations. While the pump is intact, there is no asbestos exposure as all sealing materials (gaskets and packing) are completely contained within the sealing metal surfaces of the pump. Thus, there are no asbestos emissions simply from walking past a pump whether it is operating or not, or from doing any tasks associated with maintaining a pump that does not include separating any sealing surfaces or accessing and disturbing any packing.

Plaintiff's argument is that because there were Goulds pumps at the facility, and decedent worked there for many years, he "must have" worked on Goulds pumps. But there is no evidence what percentage of the pumps were Goulds. Decedent, as one of multiple staff maintaining pumps, may have worked on every pump except Goulds pumps – consistent with his own memory. Or he may have worked only on Goulds pumps that never had any asbestos-containing components. Or he may have worked on Goulds pumps in applications that did not customarily involve asbestos gaskets or packing, for example in cool temperature or low pressure applications.

If a Goulds pump originally contained an asbestos-containing product, then Goulds denies that Mr. Robinson was exposed to it. If Mr. Robinson was exposed to asbestos or an asbestos-containing product from a Goulds pump, Goulds denies that this exposure was a substantial contributing factor in causing his disease and death. If Mr. Robinson was exposed to

asbestos or an asbestos-containing product from a product added to a Goulds pump by another entity once it left Goulds possession, Goulds denies that it has any legal responsibility for that added product not manufactured, sold, supplied or specified by Goulds.

3. **UNCONTROVERTED FACTS**

   1. William Robinson was diagnosed with malignant mesothelioma on April 2011.

   2. William Robinson died as a result of malignant mesothelioma on March 29, 2012.

   3. William Robinson and Gail Robinson were married at the time of William Robinson's diagnosis and death.

   4. William Robinson was employed at the Green River Soda Ash plant from 1966 to 1998.

   5. At the time of his death, William Robinson was 76 years old.

   6. Mr. Robinson retired from all employment in 1998.

   7. At the time of his death, William Robinson was not earning any income.

   8. William Robinson regularly smoked cigarettes from age 16 until approximately age 43.

4. **CONTESTED ISSUES OF FACT**

   Plaintiff and Defendants disagree about what constitutes "contested issues of fact," and therefore have addressed the issue separately below.

   Plaintiff:

   1. Were defendants negligent in failing to warn William Robinson of the hazards of asbestos?

   2. Was each defendant negligent in any other way toward William Robinson?

   3. Was each defendant's negligence a legal cause of William Robinson's mesothelioma?

   4. Were defendant's products defective?

5. Was the defect in defendant's products a legal cause of William Robinson's mesothelioma?

6. What is the amount of economic damages, including medical and other expenses, sustained by William Robinson due to his mesothelioma?

7. What is the amount of damages sustained by Gail Robinson due to her loss of consortium?

<u>Defendants</u>:

1. Is there any evidence to prove that Mr. Robinson was exposed to an asbestos-containing product for which each individual defendant has legal responsibility?
2. Were any of the product defendants negligent?
3. If any of the products defendants were negligent, did the negligence cause Mr. Robinson's death?
4. Was any non-party actor negligent?
5. If any non-party actor was negligent, did the negligence cause Mr. Robinson's death?
6. Was Mr. Robinson negligent?
7. If Mr. Robinson was negligent, did the negligence cause his death?
8. What is the percentage of fault of each party, if any, and the percentage of fault of any non-party actor, if any?
9. What is the amount of Plaintiff's damages?
10. Whether any of the defendants products located at the plant were unreasonably dangerous.

11. If any defendants' products located at the plant were unreasonably dangerous, then were the defendants' unreasonably dangerous products a proximate cause of the death of Mr. Robinson?

12. Did any of the defendants construct, alter, repair, manufacture, or furnish improvements to the plant's real property or materials incorporated into improvements to the plant real property?

5.  **CONTESTED ISSUES OF LAW**

The contested issues of law that remain are set forth in the pending motions in limine.

6.  **AGREED APPLICABLE PROPOSITIONS OF LAW**

The parties agree that Wyoming's comparative fault statute, Wyo. Stat. Ann. § 1-1-109, is applicable to this case.

7.  **EXHIBITS**

The parties have exchanged exhibit lists. The parties identified the following exhibits:

(a)   Plaintiff's Exhibits: 1-126.

(b)   Defendants' Exhibits: Goulds Pumps Inc.: 2000-2748; Flowserve: 1000-1273.

(c)   Any counsel requiring authentication of an exhibit must so notify in writing the offering counsel within seven (7) days after the exhibit is made available to opposing counsel for examination. Failure to do so is an admission of authenticity.

(d)   At time of trial, each counsel will furnish to the Court four (4) copies (and one copy to each opposing counsel) of the list of all exhibits to be offered.

**(e)**  Counsel also are requested to contact the Court Reporter[1] one week prior to trial to provide appropriate witness and exhibit lists and make arrangements for any special reporting requirements that there may be for the trial of this matter.

**(f)**  The parties have indicated further that: (1) Any exhibits to be used in opening statements shall be disclosed 48 hours prior to use; (2) Exhibits listed in the Joint Final Pretrial Memorandum may be admitted into evidence unless opposing counsel has filed timely separate written objections, with copies of the disputed exhibit and authority; and (3) Flowserve reserves the right to introduce exhibits not designated herein for the purposes of impeachment or rebuttal.

## 8.  DEPOSITIONS

Plaintiff will present William Robinson's testimony will be presented via video tape or transcribed deposition. Plaintiff may also need to present the testimony of corporate representatives of Goulds Pumps, Inc., Flowserve, and Tata Chemicals by deposition as Plaintiff has not identified these representatives and does not know their availability.

Any party proposing to offer all or any portion of a deposition shall notify opposing counsel at least **fourteen (14) days** before trial of the offers to be made (unless the necessity for using the deposition develops unavoidably thereafter). If objection is to be made, or if additional portions of a deposition are to be requested, opposing counsel will notify offering counsel at least seven (7) days before trial of such objections or requests. If any differences cannot be resolved, the Court must be notified in writing of such differences at least three (3) business days before trial.

---

[1] Judge Johnson's Official Court Reporter is Julie Hedelson Thomas. She can be reached at (307) 778-0078 or at jht.thomas@gmail.com.

9. **DISCOVERY**

Plaintiff has agreed with several parties to take the discovery depositions of various expert witnesses prior to trial. Plaintiff also agreed to allow Defendants the opportunity to take the depositions of Gail Robinson, Joseph Robinson, and Judy Laughter focusing on damages prior to trial. The parties do not anticipate the need for any Court intervention in these matters. Other than these agreements, the parties believe discovery is complete.

10. **WITNESSES**

(a) **Plaintiff's Witnesses**

In the absence of reasonable notice to opposing counsel to the contrary, the Plaintiff will call, or will have available at the trial: Gail Robinson, Joseph Robinson, Judy Laughter, a corporate representative of Goulds Pumps, a corporate representative of Flowserve, a corporate representative of Tata Chemicals, Inc., Dr. Jacqueline Moline, and Gerald Markowtiz Ph.D..

Plaintiff may call: Jack Jereb.

(b) **Defendants' Witnesses**

<u>Goulds Pumps, Inc:</u>

In the absence of reasonable notice to opposing to the contrary, Defendant Goulds Pumps will call, or will have available at the trial: Sheldon Rabinovitz, Allan Feingold, M.D., Franke E. Gomer, Ph. D., Jack Jereb, William Robinson and Bruce Conner.

<u>Flowserve:</u>

In the absence of reasonable notice to opposing to the contrary, Defendant Flowserve may call,: Allan Feingold M.D., John Henshaw, Tom Spence, William Robinson, and Jack Jereb.

In addition, Defendant, Flowserve Corporation f/k/a The Duriron Company, Inc. ("Duriron" or "Defendant"), discloses the following fact witnesses, who may be called to testify at trial:

9

1. Any present or former employee of Duriron. Duriron specifically identifies Thomas Spence as potential company/corporate witness, but reserves the right to call any current or past employee in response to the evidence presented in plaintiff's case-in-chief.

2. Duriron reserves the right to cross-examine any fact or expert witnesses disclosed by the plaintiff as well as any and all treating physicians of plaintiff. In addition, defendants adopt, insofar as they deem it consistent with their own defenses, any fact witnesses disclosed by any co-defendants or any plaintiff in this matter.

3. Duriron disclaims any duty to introduce any of the above-mentioned witnesses at trial by virtue of placing them on the list.

4. Duriron specifically reserves the right to call any witness listed by any party, either live or by deposition or by previous trial testimony who may have been called to testify in this case for the purpose of impeachment, rebuttal, or any other purpose the law allows.

5. Duriron has not yet completed its determination of witnesses and reserves the right to supplement and amend this list up to and including the time of trial.

6. Duriron reserves the right to call any of its designated expert witnesses and any expert witnesses designed by other defendants.

7. Any and all treating physicians, attending physicians, screening physicians and pathologists of the plaintiff's decedent and of the plaintiff.

8. Any and all family members, friends, or other witnesses disclosed by the plaintiff or otherwise revealed in discovery to be conducted.

9. Any and all co-workers or other employees of the employer(s) of plaintiff's decedent as disclosed by plaintiff or other defendants or as otherwise may be disclosed in trial preparation and discovery.

(c) Where possible any challenges to witnesses must be made no later than **November 2, 2015**, and the Court notified of such objections. Where possible, any witness challenges will be ruled on before trial, and objections reserved for the record.

(d) The parties reserve the right to call any witness listed by the opposing party and any witness required for rebuttal or impeachment.

(e) At time of trial, each counsel will furnish to the Court four (4) copies of the list of names for all anticipated witnesses, including whether each witness will be testifying during the liability or remedy phase of trial.

11. **REQUESTS FOR INSTRUCTIONS**

Requests for instructions and proposed verdict forms must be submitted to the Court on or before **October 28, 2015**, subject to the right to counsel to supplement such requests during the course of trial on matters that cannot be reasonably anticipated. Stock instructions need not be provided. However, if the parties desire instructions that differ from the stock instructions, they may provide them with their proposed substantive instructions. Each party is to submit a separate **concise** statement of their contentions. Requests for instructions are to include one set of authority and one additional set ready for submission to the jury; no signature block on the bottom of each instruction is necessary. Proposed Jury Instructions, Special Verdict forms, and proposed voir dire shall be submitted in writing and filed, as usual, <u>and</u> also sent as an

attachment via email directly to Judge Johnson's Chambers, wyojudgeabj@wyd.uscourts.gov, formatted for WordPerfect or Word.

**12.   AMENDMENTS TO PLEADINGS**

There are no requests to amend any pleadings at this time.

**13.   OTHER MATTERS**

**(a)**   Proposed voir dire questions shall be submitted with each party's jury instructions. Each side will be given thirty (30) minutes to conduct their own voir dire of the jury panel following voir dire by the Court.

**(b)**   The following motions are pending in this case: Defendant Flowserve's Motion in Limine to Preclude Dr. Moline's Testimony regarding Causation Opinions (Doc. 209), and Defendant Goulds Pumps Inc.'s Motion in Limine (Doc. 211).

**(c)**   The Court is implementing a new system for electronic submission of exhibits to the jury. The jury evidence recording system (JERS) allows jurors to review evidence (documentary, photo, or video exhibits) on a large plasma screen during deliberations. Attorneys should provide their trial exhibits in electronic format on a USB drive, DVD, or CD to the Office of the Clerk of Court on or before this date. On or before **October 26, 2015**, Parties are required to provide their exhibits in the following electronic formats:

- Documents and Photographs: .pdf, .jpg, .bmp, .tif, .gif
- Video and Audio Recording: .avi, .wmv, .mpg, .mp3, .mp4, .wma, .wav

Regarding the size of electronic evidence, individual files should not exceed 500MB. If possible, exhibits approaching or exceeding this size limit should be separated into multiple files. Parties may obtain additional information regarding the submission of electronic exhibits by contacting the Clerk's Office at (307) 433-2120.

**(d)** Defendants believe that portions of Plaintiff's designation of witnesses are insufficient or improper. Specifically, Defendants believe that Plaintiff failed to provide sufficient information as to the anticipated testimony of Gail Robinson, Joseph Robinson, and Judy Laughter. In addition, Defendants believe that under Wyoming law it would be improper for any of those witnesses to testify about Mr. Robinson's pain and suffering, loss of enjoyment of life, or any other type of damages that cannot be awarded in Wyoming. In addition, Defendants believe that Plaintiff's designation of corporate representatives of Defendants are improper. Plaintiff has not identified any specific witnesses from any of these entities who she may or will call, nor has she provided any anticipated testimony. The fact that Plaintiff does not know the "full scope of their knowledge and area of testimony" is the product of Plaintiff's failure to take depositions of any witnesses from Defendants.

## 14. MODIFICATIONS—INTERPRETATION

This pretrial order has been formulated after conference at which counsel for the respective parties have appeared. Reasonable opportunity has been afforded counsel for corrections or additions prior to signing by the Court. Hereafter this order will control the course of the trial and may not be amended except by consent of the parties and the Court, or by order of the Court to prevent manifest injustice. The pleadings will be deemed merged herein. In the event of ambiguity in any provision of this order, reference may be made to the record of this conference to the extent reported by stenographic notes, and to the pleadings.

## 15. TRIAL SETTING

The jury trial will commence on **November 9, 2015 at 1:30 p.m.**, in Cheyenne, Wyoming. The estimated length of trial is fourteen (14) days. The possibility of settlement of this case is considered _____ good, __X__ fair, _____ poor.

Dated this 14th day of October, 2015.

_____
Alan B. Johnson
United States District Judge